We will hear argument this morning in case 24993, Olivier v. City of Brandon. Mr. Chief Justice, and may it please the Court, Gabriel Olivier is called to share his Christian faith by preaching in a city park. He was arrested and charged with violating a city ordinance that purports to criminalize his religious speech. Olivier has a Heartland Section 1983 claim to seek prospective relief, protecting him from future prosecution under the ordinance. That pre-enforcement Section 1983 claim isn't predicated on a past unlawful conviction, and this Court shouldn't extend heck to bar it. As this Court recognized nearly 50 years ago in Wooley, when a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights. Neither the habeas statutes nor heck in its progeny bar Olivier's claims. The relief he seeks, an injunction and a declaration, won't annul his conviction or alter his sentence. His claims for future relief are, as this Court explained in Dotson, distant from the core of habeas safeguarded by heck. The Fifth Circuit alone deprives a person of access to a federal forum to vindicate federal rights solely because he was previously convicted under the law he challenges. But a prior conviction shouldn't forever bar a claim for future protection. Olivier's past prosecution makes him a perfect plaintiff, because past enforcement is good evidence that the threat of future enforcement is real. The Court should confirm that the federal courthouse doors remain open to persons like Olivier, whose rights have already been infringed. I welcome the Court's questions. Ms. Holt, what do you do with the language in Wilkinson that seems to suggest that equitable relief could also be precluded? Certainly, Your Honor. Our reading of Dotson is that there is no form of relief, not damages, not a declaration, not injunctive relief that is per se allowed or forbidden under heck. This Court did say in Dotson that a claim for prospective relief would generally not be barred by heck, and it's repeated that admonition. But our position is that you look at the nature of the relief to see if it's heck barred. This Court has said that it will not ordinarily be the case that purely prospective relief, like Mr. Olivier seeks, is barred by heck. But that's not a per se rule, and that's not our position, Your Honor. So are you challenging the underlying judgment or conviction of the previous convictions by petitioner? Not at all, Your Honor. We are solely seeking an injunction and a declaration that the ordinance cannot be applied. Is this the type of suit that can only be brought in habeas? I would say this is the type of suit that cannot be brought in habeas. This Court has described habeas relief as relief that shortens a sentence, requires immediate relief, or does something with the attendant effects of the conviction, and the relief that Mr. Olivier seeks will do none of those things, Your Honor. What would it take to have the consequences of the conviction carry forward? For example, would particular burdens that are imposed on someone who's been convicted carry forward, and would that be enough to prevent the 1983 action? Like, for example, the individual can't possess firearms. So long as that is carried forward, and if he overturned the conviction, it would not, is that enough to block the subsequent 1983 action? So, Mr. Chief Justice, in our case, Mr. Olivier is not seeking any relief from any attendant aspect of his sentence. I believe in the Woolley v. Maynard case, driving privileges were at issue there, and nothing about the prospective relief in that case did anything to look back and operate on the sentence. So all of that would be intact. What relief would he get under 1983 from any of those other types of burdens? Nothing? He would not. No. What about the probationary period condition? Isn't there a little quirk in this case? My understanding is that his prior sentence carried with it conditional terms that would be eliminated if he won this lawsuit, right? So, as an initial matter, Justice Jackson, this is an argument that appeared for the first time in the red brief, and it was not made below, so in our position, it's doubly forfeited. But to answer your question, by the time the district court in our case issued the order, the terms of the probation, if you will, which were simply not to violate the law again, had already passed. I think it was maybe two or three months before the district court's order. So even if not forfeited, that provision, and importantly, Mr. Olivier did not seek to challenge any aspect of his probation, Can I give you a hypothetical, though? Let's just pause it for a second, that he was still under those terms of release. That he, what was it, his one-year sentence for the past violation was suspended on the condition that he not violate the ordinance for a year. He then brings his 1983 lawsuit. And I guess I'm just trying to understand under those circumstances, which I admit are unusual, would it really be fair to say that he's seeking only prospective relief with respect to the 1983 lawsuit if it would have the practical effect of suspending or terminating the past conditions? So our position would be it would not have that effect, because Mr. Olivier did not seek to undo any aspect of his prior conviction, including the probation. So nothing about the injunction or the declaration that he sought would preclude enforcement of the probation. He didn't challenge his probation. And because he had already served it by the time the district court ruled, he couldn't have challenged it if he wanted to. I think you're fighting the hypothetical a little bit, and I'd like to just pursue it a little bit further. So let's say he is on probation, and the probation is you cannot violate this law again. And then he brings an injunctive action under 1983 to say you cannot enforce this law to me. Wouldn't that necessarily imply and, in fact, preclude the courts and law enforcement agencies from enforcing that law again to him during the course of his probation? No, Your Honor. I don't think it would not prohibit law enforcement from seeking to enforce the terms of the probation. The probation being don't violate this law again, the same law that he's bringing in 1983 to say cannot be enforced. That's correct. Even that, you'd say, would be permissible and not problematical under HEC. I don't think it's problematic under HEC. Let's say I disagree with you on that. All right. Okay. What do we do with the fact that, in this case, while the probation did expire before the summary judgment ruling, it was in place at the time he filed his lawsuit? And should we be assessing HEC problems? I assume I think there is one on the hypothetical Justice Jackson gave you. Should we be assessing HEC problems at the time of summary judgment, at the time it reaches his court, or at the time of the filing of the lawsuit? I think in this case, certainly the time to assess it is by the time the district court had issued its order. I think my friend's argument on the other side, in asking for a time of filing rule, mistakes HEC, which is about when you have a cause of action for a jurisdictional rule. So you wouldn't have a cause of action under HEC at the time you file, but it does spring into action, and there is a cause of action by the time of summary judgment. Is that it? In terms of when I think you would assess when HEC applies or not, I think that's one of it. And I think we know that in part, Your Honor, from Wallace v. Cato, where Justice Scalia suggested that under the unusual facts of that case, one proper thing to do would be to stay the action until future action is taken. If it were a time of filing rule, Justice Scalia could not have made that suggestion. And then what do we do with the fact that your client sought damages, compensatory damages? Now, I understand he has forsworn those for us. But in his complaint, he did seek compensatory damages, which is backward-looking. A couple of responses to that, Your Honor. I think as an initial matter, just to be clear on the record, he abandoned the damages claim in the Fifth Circuit on appeal. Even if he had not, this Court takes a claim-by-claim approach. Well, it's the same claim. It's just a different form of relief. It's still a 1983 claim, but it's just a different remedy. Yes, and let me be clear, Justice Gorsuch. This Court goes claim-by-claim or relief-by-relief, and it assesses those differently, right? So that in Balasoff, for example, Justice Scalia, he barred one of the claims that was backward-looking, but remanded so that the purely prospective injunctive relief claim could go forward. Last question, and I'll leave you alone, I promise. A win here, what if it had some collateral consequences, issue preclusion consequences, such that it would preclude, for example, the State from seeking collateral consequences for his conviction? I don't know what they might be in this case. Let's say there were some, barring him from owning a gun or whatever it might be, and your victory here would seem to preclude them from doing that on issue preclusion if you were to win. What do we do about that? I think Justice Scalia anticipated just that question in Justice Gorsuch when he made clear that the federal 1983 judgment would not, to quote Justice Scalia, would not automatically or even permissibly preclude the State. That would be another inquiry, and there might be various grounds that a State applying federal issue preclusion rules, as the State court would do, that a State could, so that preclusion would not inevitably apply in that case. Let me pick up on that. In order for you to win, would it not be necessary for us to backtrack on a number of things that the Court said in Heck? The Court said that the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Now, is your position consistent with that? Absolutely, Justice Alito. In fact, we think that this case comes within the four corners. How can it be consistent with that if someone is convicted under a statute and then brings a 1983 claim for prospective relief, seeking to have that statute declared unconstitutional? A ruling in that plaintiff's favor in the 1983 action certainly implies the invalidity of the prior conviction, does it not? Your Honor, we don't think so, and let me offer two reasons why not. And let me begin, as Your Honor did, with Heck itself. After setting out the necessarily implies test on page 487, on page 488 Justice Scalia rejected a broader rule which would bar Section 1983 suits when they would resolve a necessary element to a likely challenge to a conviction even if the Section 1983 court need not determine that the conviction is invalid. And the element here is the law's unconstitutionality, and that's all that Section 1983 suits. Let me make it more concrete to pick up on the situation that Justice Gorsuch was positing. Let's say that a defendant who has a prior conviction for a nonviolent offense is convicted for possession of a firearm by a convicted felon. And let's suppose that that individual then brings a 1983 claim seeking to have the statute declared unconstitutional insofar as it applies to someone like him with a prior conviction for a nonviolent felony. Would that not, and let's suppose he wins on that, and then he is, meanwhile, he's charged once again with possession of a firearm by a convicted felon. Doesn't that invalidate that prosecution? No, Your Honor, because I think the key is what is the relief that the individual is seeking. So if you're seeking prospective relief that you cannot be prosecuted under a law going forward, that is a set of facts in the future. What HEC protects is anything looking back to the set of facts in the past, and it protects that conviction. It protects individual convictions, not the criminal law and the abstract, Your Honor. On your question 2, footnote 10 of HEC says, The principle barring collateral attacks, a longstanding and deeply rooted feature of both the common law and our own jurisprudence, is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated. So we would have to abandon that, would we not, in order to rule in your favor on question 2? I don't believe that. If the court did need to reach question 2, which we don't believe it does, I think this court, in another footnote in Muhammad v. Close, indicated that that issue was still open. So we believe that issue remains open for this court to resolve. Counsel, this may be just repeating prior questions, and if so, just repeat your answer. What about a requirement that the individual show up for probation meetings? Every two weeks, you've got to show up, so we make sure that, you know, whatever. Would he still have to do that after the law on which that is based has been declared unconstitutional? Absolutely, Your Honor, because again, the only effect that the federal judgment has is forward-looking. It is prospective relief. It prohibits the enforcement of the ordinance against him on a forward-looking basis. It does not reach back. Isn't the requirement of probation just doing that, just continuing the consequences that were imposed from his prior conviction? Perhaps, Your Honor, but again, Mr. Olivier is not challenging any aspect of that aspect of his probation, which, as a record matter, had already passed by the time the district judge ruled in his favor. But again, in a situation like ours, Mr. Olivier has not and could not challenge any attendant effect of his conviction. Just like in Wooley v. Maynard, the Maynards' driving privileges, they had loss in driving privileges, and those were not affected by the forward-looking relief in that case that simply said you cannot enforce this law on a forward-looking basis to these individuals. So what would happen if someone else challenged this law on a prospective basis and won? And as the Chief is positing, Mr. Olivier has this obligation to continue checking in on probation. So, Justice Barrett, we think that hypothetical actually underscores the perversity or the nonsense that Judge Oldham highlighted, is that that ruling would, I guess, undermine the legal reasoning of Mr. Olivier's sentences, just as Alito and I were talking about. It would do the same thing, no different, and yet we would certainly not say. Would there be some separate steps, then, that someone like Mr. Olivier might take to try to relieve himself of some sort of ongoing collateral consequence or probationary period? Yes, there would be a whole series of steps that someone in Mr. Olivier's position would have to take, and to borrow from this Court's language, it is hardly inevitable that he would obtain any relief down the road at the end of the day. But that would be a multiple-step additional process that Mr. Olivier or someone in his position would have to undergo. And that is so whether he won his quest for prospective relief or whether someone else did, on the same argument that the law is unconstitutional? Yes, because, of course, any judgment as to another plaintiff would not apply to Mr. Olivier. He would still, I think, as this Court underscored most recently in CASA, he would have to see to that. But, I mean, he would, I guess what I'm saying is that the process, are you saying that the process would be the same for him whether he was the one who was victorious in the suit or whether a third party was the one who was victorious in the suit? There might be some slight differences in terms of state procedure down the line, so I don't want to give a category, but essentially for all the ways that matter in this case, yes, it would be. And I see my turn. Thank you. Justice Thomas. Ms. Holt. Would a victory by the third person who was never convicted under this ordinance in a 1983 action, would it impugn the reasoning underlying the conviction of Petitioner? Yes, absolutely, Your Honor. Would it impugn it any differently than if Petitioner brought the 1983 action? No, Your Honor. Would it undo the conviction or the confinement of Petitioner? No. Justice Alito. If I think that your blanket argument that heck doesn't apply to prospective relief under any circumstances goes too far, what would you propose as a backup argument that would result in a decision in your favor? Do you have a more qualified argument? Sure. I think we could rely on heck itself and say that prospective relief where no element of the Section 1983 claim, no element of the Federal 1983 claim requires the Petitioner to prove the invalidity of the prior conviction. No element of the claim would do that. I think that would be another way, Your Honor, consistent with heck, to further limit prospective relief. I'm not sure I understand that. If the plaintiff in the 1983 case has been convicted of violating his statute, and the statute is declared in the 1983 case to be unconstitutional, why doesn't that undermine the – I see, I see. I understand Your Honor's question. I was taking it more as just a general rule regardless of the circumstances. I think perhaps one line, and my friend can perhaps say more about this here, I think the Solicitor General's Office has suggested one line you might draw would be in terms of custody. If, as Mr. Olivier, if the former criminal defendant is not in custody, there would be no barrier. If the defendant were in custody, then that would be a different world. So I think that would be another line that this Court could draw. Okay. Thank you. Justice Sotomayor? That doesn't seem consistent with Edwards, where the prisoner was in custody and there was – I think there would definitely be some tension there, Justice Sotomayor. A lot of tension. I don't deny that. I want to understand your argument or at least simplify it in my own mind as I have, okay? Heck itself, and you have to put it in context, was a malicious prosecution claim. And you said to prove that element, you had to prove that the prosecution itself had been malicious. And the Court there said the cause of action is the prior conviction, and so you can't bring this by 1983. Correct? Yes, Your Honor. Because one of the elements would require favorable termination of the prior conviction. Exactly. And the same thing with Edwards. If he won, alleging defects in his disciplinary proceedings, that would undo the good time credit that was revoked. So one of the elements was to prove that that revocation was necessary, correct? Correct. What you're saying, I believe, is if the claim does not rely on any facts of the prior conviction or anything involving the prior conviction or its proceedings, then it's purely prospective and that the defendant should be permitted to bring. Yes, thank you, Your Honor. It's almost as simple as that. I think where some of my colleagues may be hung up, and I was actually too when I read the HEC language, is the HEC language is very broad. It basically says, if it calls into question language, by definition, a win by you or a win by a third party would call the prior convictions into question. And so that line is not there. By you parroting or trying to deny that line doesn't help. It does call it into question. It will be used by you and others to try to go back in other proceedings and get those expunged or otherwise set aside. You may or may not win, but it will call it into question. So I guess what Justice Alito started with was saying to you, do we have to disavow HEC? And so I want to narrow the question to say, does a ruling according to the line we just spoke about earlier, which is prospective relief that doesn't on its own rely on the prior conviction or undoing the prior conviction, doesn't directly call it into question? No, and it doesn't. And I think you can't construe necessarily implies an isolation. I think the surest guide for what necessarily implies the invalidity of a prior conviction means is to look at how this court has applied it in case after case. And this court has only held a claim or relief HEC barred in, there's two buckets. The first bucket are claims where the federal relief would result in immediate or faster release from confinement. The second bucket is damages resulting from past confinement. Those are the only two buckets of claims where this has applied HEC. And I think when you look at how this court has applied the necessary implied damages, and I think it's significant that Justice Scalia, who authored HEC, was in the majority in all of this court's HEC cases while he was on the court. So I think that has a particular pedigree in terms of how this court has approached it. And so Mr. Olivier's claims for wholly prospective relief clearly don't fall into either bucket of cases for relief where this court has applied HEC. So in our view, what we are saying is perfectly, perfectly consistent with the language of HEC as this court has applied it in case after case. Thank you. Justice Kagan? I hate to beat a dead horse here, but I mean I understand that we haven't applied HEC to this case yet. I mean it doesn't fall into one of these buckets. But I think that the questions really just do go to the HEC language and the HEC rule. And I guess I'm just having a little trouble understanding how it is that we wouldn't have to say, I'm sorry, we just got it wrong when we wrote this broadly. Because the language says what it says. I mean necessarily imply the invalidity of a conviction. If you go ahead with your suit and you win and you have the statute declared facially unconstitutional, what follows from that logically is that the past conviction was infirm. The past conviction was invalid. And whether or not you're looking to change that conviction in any way, you have just demonstrated the invalidity of your conviction. So if we take HEC for all it's worth, I think you can't win. I think that you have to be saying you just can't take that language to mean what it means. Respectfully, Justice Kagan, I don't believe that's true. Because again, if you look at how the court has applied the necessary implication test in case after case, No, I guess we haven't applied it to a case like this because we haven't had the opportunity to talk about how it applies to a case like this. But again, the language, just read to mean what it means, puts you out of court. I disagree. I disagree because I think you can't necessarily imply the invalidity of the conviction. Nothing in wholly forward-looking relief, prospective relief, an injunction that the city cannot apply this ordinance to Mr. Olivier. Nothing about that requires Mr. Olivier to prove anything contrary to his conviction as in HEC. Nothing about that claim is backward-looking. It is based on a different set of facts. So I think if you look at how the necessary implied language was applied in HEC itself, and all of the places in HEC where Justice Scalia took time to say, look, we are not adopting a broad rule that we were asked to, where if there's an element, right, if there's an element involved. I think that this was meant to be a pretty broad rule. You know, Justice Scalia has a very long footnote where he engages with Justice Souter, who had said that his analysis of malicious prosecution claims were wrong, right? And then he ends this footnote and he says, well, let's suppose Justice Souter is right. It would simply demonstrate that no common law action, not even malicious prosecution, would permit a criminal proceeding to be impugned in a tort action even after the conviction had been reversed. That would strengthen our belief that 1983, which borrowed general tort principles, was not meant to permit such collateral attack. And I mean, I think that's a pretty sweeping statement. It's just like 1983, you can't use it in any way to undermine or suggest the invalidity of a prior conviction. Malicious prosecution, not malicious prosecution, it just can't be used that way. And I appreciate that you're not asking anything to happen to that prior conviction, but just by the nature of your suit, if you win, you will have proved that that prior conviction was wrongful. I think what I would say to that, Justice Kennedy, let me try it again this way. If you take a step back and think about what is the point, what is the purpose of the necessary test? It is to protect the core of habeas. That is the point of the test. And in case after case, this court did that. The two buckets of relief, relief that would shorten or get you out of jail immediately, or damages flowing from that confinement. This court has let all manner of other claims that some might could be said in a very technical sense to necessarily imply the invalidity of a conviction, has allowed those claims to go forward. And Justice Scalia, in his concurrence in Dotson, was as concerned about sort of bloating habeas law, right, by letting the heck bar apply too strenuously. He was as much concerned about not bloating habeas as Justice O'Connor was in Skinner about protecting the core of Section 1983. So that when this court in Nelson said, look, if you give heck too broad, you are going to keep the heartland of Section 1983 claims, which is this claim, right? It is a forward-looking, it is a pre-enforcement challenge to a city ordinance. That is as textbook Section 1983 as you get. Thank you. Thank you. Justice Kavanaugh? Do you want to say anything about Judge Richmond's comments about preclusion, a different preclusion issue than the one that you've discussed earlier, which is the preclusion that stems from the criminal proceeding that may hamper, if not defeat, an attempt to use 1983 in a case like this? Do you want to say anything about that? Certainly. Thank you, Justice Kavanaugh. I think the first thing I would say is, as Judge Richmond recognized by joining the dissenters who believe Mr. Olivier's suit should go forward, that is a matter for the courts to consider on remand. With respect to Mississippi law in particular, Mississippi law does not preclude, does not apply issue preclusion to constitutional claims. At JA 46, State v. Smith is cited there. But Mississippi law would not apply preclusion. But in any event, it is something for remand. That is correct, Your Honor. Thank you. Justice Barrett? Justice Jackson? Can I just ask you to speak quickly to QP2? I mean, I guess I'm wondering how your embrace of Justice Scalia's vision related to the elements, and that's how we think about QP1. How is that consistent with your position on QP2, that somehow the conviction matters? Justice Scalia says in his footnote in Heck that it shouldn't matter whether, not, sorry, the incarceration, excuse me, matters. The person is still in custody. Yes, and I think the distinction there, Justice Jackson, is between somebody who was in custody and no longer is. Our argument in QP2 is that in our situation where Mr. Olivier was never in custody, there is no justification for applying Heck's sort of attempt to harmonize the broad text of Section 1983 as a general matter and then the specific text of ADA. But I sort of felt like the thrust of that was that Heck was about the reconciliation of those two statutes. And so if you're not in custody, which is kind of the necessary predicate for habeas, if you're not in custody, you've never had access to Heck. No, I understand, but I guess the opposite view is that if Heck is really about the elements and it's really about the fact that this is analogous to tort law, then the fact that you were never in custody shouldn't matter. I mean, that's what Justice Scalia says in Heck. So it just seems like you're taking two different positions or two different views of what Heck is really about. I think what we would say is if you don't agree with us as to our top-line position in QP1, which I think tracks the first thing, what you said, then another reason why Mr. Olivier should not be Heck-barred is because he was never in custody. Okay, thank you. Thank you, Your Honor. Thank you, Counsel. Thank you. Ms. Robertson. Mr. Chief Justice, and may it please the Court, this Court has long recognized Section 1983 as a vehicle for bringing pre-enforcement challenges to state laws, and in Woolley it held that a prior conviction under the law does not bar that relief. This case involves a straightforward application of that precedent, and Justice Alito, Justice Kagan, this Court can resolve the case without backtracking from any of the existing limits on Section 1983 suits. There are two limits relevant here. First, the Court has limited retrospective challenges to a state conviction, sentence, prosecution, or their effects, including suits seeking damages for claims analogous to malicious prosecution. Second, the Court has recognized additional limits for individuals in custody to avoid a conflict with the federal habeas statute. But a prospective suit from an individual out of custody is cognizable, and this Court should accordingly vacate and remand on the first question presented without reaching the second. I welcome the Court's questions. If a third party brought a 1983 action challenging this ordinance and won prospective relief, what would be the effect on the reasoning underlying the enforcement of the ordinance against Petitioner? We think that it would imply that the ordinance was invalid in the same way that this prospective suit brought by Petitioner would imply that his conviction under that statute was invalid. That's why we don't understand this Court's necessarily implies test to extend to prospective suits brought by individuals outside of custody. Where we do understand the necessarily implies test to apply are two circumstances. The first is where an individual is bringing a retrospective suit or a suit for damages. In that context, the context of heck, this Court has considered claims that would imply the invalidity of a conviction to be analogous to malicious prosecution and held that they're barred. In addition, when an individual is in custody, this Court has held that any relief that would necessarily imply the invalidity of a conviction is barred. And we would understand that to include prospective suits. Ordinarily, of course, as this Court said in Edwards, prospective suits won't imply the invalidity of the individual's conviction and therefore his confinement, but where they do, and we think a prospective facial challenge would necessarily imply a legal infirmity in the conviction, we would understand those suits to be barred too. But when an individual is out of custody and bringing that type of prospective suit, that's just bully and the Court has made clear that those claims can go forward. What if a non-prisoner seeks to compel testimony in a collateral attack on his conviction like a proceeding for a writ of error quorum novus? So if a non-prisoner is bringing a sort of backwards-looking attack on his conviction, we think that's barred by the even more basic principle that federal courts don't sit in review of state court judgments absent express authority. The habeas statute, of course, is one such express authority, but it comes with a host of procedural limitations that Section 1983 does not. So Section 1983, of course, can't be used as a vehicle to try to invalidate a past conviction or its effects whether a person is in or out of custody, but Section 1983 can be a vehicle for prospectively challenging a law to avoid future prosecution and the future effects of that law. I'm finding your argument very confusing, and so maybe you can help me. Justice Sotomayor had a very kind of simpler way of thinking about it to the extent the person is bringing a 1983 lawsuit that includes an element that would be shared or the element that involves the past conviction. You can't do it. If he's not doing that, then you can. So how does that differ from the formulation that you are proposing? So I think our line is similar with one caveat. So we generally agree with that bright line between retrospective attacks and prospective attacks. The caveat is that for individuals in custody, we think the court has imposed additional limits to avoid a conflict with the federal habeas statute. So if someone is in custody, we understand the language in this court's opinion to suggest that they couldn't bring even a prospective suit that would necessarily imply the invalidity of their conviction, and a facial challenge to their statute of conviction would be that type of suit. So a prisoner whose religious rights are being violated has been disciplined for a violation of his or her religious rights can't come into court and say, this regulation is unconstitutional because it will impinge on religious rights. I want you prospectively to enjoin this regulation. A prisoner can't do that? I think the question there would be, has he been disciplined and suffered a loss of good time credits? Let's assume that. If he has, then yes, we do understand. What sense does that make? What difference does it make? I mean, what if he says, I'm not challenging or I don't really care about what has happened to me in the past. I'm saying from this point forward, this is unconstitutional, and please do not allow it to happen to me again. So at the outset, I'll say, of course, the court doesn't need to resolve this question because the petitioner here is out of custody. But the sense that we think that this line makes is that the court has been very concerned about allowing an end run around the federal habeas statute and, of course, anything that might imply that the deprivation of- So why do we do Edwards, which was written by Justice Scalia? Edwards was a disciplinary hearing with a loss of good time credit, and Justice Scalia dismissed all of the retrospective claims, money damages, declaratory judgment. But he permitted the prospective challenge of whether the disciplinary proceedings, procedures were unconstitutional. He remanded it to see if they could move forward. And he said there's a difference between retrospective relief and prospective relief. That's right, and I want to be clear that a prospective challenge ordinarily will not necessarily imply the invalidity of a past deprivation of good time credit. But your argument today would have made Edwards dismiss the whole case, not part of it. I don't think so because I think the court was clear that a prospective challenge to the unconstitutionality of procedures won't necessarily imply the invalidity of past deprivations of good time credits. There's a difference there between a challenge to procedures prospectively, which we absolutely agree under Edwards can go forward, and the rare case where a prospective challenge would necessarily imply the invalidity of the conviction, but a facial challenge to the constitutionality of the rule that the individual in custody violated might be that type of prospective suit. That's exactly what this case is about. Right, so for us it is critical that the individual is out of custody. But I'm saying to you I don't think it should make a difference whether he or she is in custody, and I don't see that our cases have ever, whether it's Edwards or Wilkinson or any other, has focused in on that as the exclusive remedy. I think if... As the exclusive situation. If you think that a prospective suit could proceed in or out of custody, that makes this case all the easier, and of course the court doesn't need to address whether someone in custody can bring this type of suit. We're just trying to reserve the question because we do think it would implicate different and more difficult questions. It might make the case all the easier, but it would be quite radical to say that someone who is in custody, would it not, someone who is in custody for violating a statute, can while in custody bring a 1983 action to challenge the constitutionality of the statute under which the person is serving a sentence? That's right, and that's why we're trying to hold the line and at least have the court reserve the question. Well, they have to have the credible fear of prosecution, and if they're in custody for that crime, they're not going to be committing it again. At least not immediately. So certainly we think there will often be Article III constraints. Of course, we understand an individual to be on custody when, say, they're on supervised release, probation, parole, and so there may be instances where someone... Why would someone who is in custody have to show a... in order to have standing to show the likelihood of being prosecuted again under that statute? The person is already serving time, or he is having his liberty anyway. I think it would... I would like to just say for a minute why we think it makes sense to draw this in custody, out of custody distinction for these prospective challenges, because we do think it is about a concern about an end run around the habeas statute in two respects. The first is, I think this court has expressed the concern that if an individual in custody obtains a judgment from a federal court... Can I finish? Thank you. From a federal court that necessarily implies the invalidity of his conviction, and that's his confinement, he may be able to take that judgment and use it to spring his release. That would certainly be the case if the judgment came from this court, then he would be able to seek habeas release regardless of where he was in the habeas process. At minimum, it would create an acute tension between a federal court judgment that demonstrates the unlawfulness of his confinement at the same time that he has a state judgment, his conviction, which would say he can be unlawfully held. I think this court, Section 1983 jurisprudence, is designed to avoid that tension, but importantly, none of that tension exists when the individual is out of custody, as this court in Woolley recognized, because he's already released. He can't take that judgment and use it to do anything to affect his confinement. Thank you, counsel. Justice Thomas? Justice Alito? If you were writing an opinion, could you just give me in a couple of sentences what you think the rule should be, a summary of what you think the rule should be? We think the court should limit its decision to prospective suits for individuals out of custody, identify this as a straightforward application of Woolley, and that should really be it. It can make clear that its decision does not address any retrospective suits, including suits for damages. That's the second question presented where we're with the city. And it can also make clear that its decision does not speak to the relief available to individuals in custody where there's a greater potential for conflict with the federal habeas statute. Okay, and that's pretty complicated, but thank you. Justice Sotomayor? Maybe one further adornment to your two-line, maybe five-line rule. How about parole? If an individual is on parole, we do understand that person to be in custody, and therefore we would reach a different result if they tried to bring that prospective challenge. And that's because, again, habeas would be the appropriate relief in those circumstances, too. Exactly. We think when a person's in custody, the appropriate vehicle for testing the constitutionality of their statute of conviction is habeas. And I just want to ask you a question about, as Justice Kagan points out, HEC has some very broad and pretty unqualified language. And you've got a footnote, oh, my goodness, footnote four in your brief, in which you point out that the petitioner has disclaimed any interest in using this judgment to expunge his record. What if that weren't the case? What if the petitioner avowedly brought the suit as a step toward expunging his record? Would that offend habeas? Would that pose a problem? I don't think so if the individual is out of custody, because at that point, as long as he's not asking the federal court, of course, to directly nullify the effect. So if he says, I want a declaratory judgment because I'm suffering collateral consequences from this conviction and I want the court to invalidate the conviction so that I don't suffer those collateral effects, then we do think that that would be barred. But if he seeks purely prospective relief, we don't think the court needs to inquire into what his ultimate aim is with that judgment. At that point, the availability of any future relief will depend on the remedies the state has chosen to offer. So if the state wants to take that federal judgment and consider it in an expungement proceeding or a clemency proceeding, that's up to the state. But that doesn't present the same sort of tension with federalism and comedy that a judgment when someone's still in custody would. So maybe adding a sixth line to your two-line, that a declaratory judgment seeking a declaration might be a problem, too, but a purely prospective injunction is different. Well, a declaratory judgment is always hitched to the harm the person alleges. And so if the harm they allege is I want to engage in religious expression moving forward and I can't, so I want a declaratory judgment, that's fine. But if the harm is I'm suffering harms from my conviction, that's not because that asks the federal court to sit in review of a state court judgment, which, of course, would have been deeply rooted principles. I think I've got the two lines now. Justice Kavanaugh? Justice Jackson? I want a declaratory judgment in order to deal with my prospective exercise of my religious beliefs. But if I'm a prisoner, you say no. Is that right? So your big fulcrum is in or out of jail. When it comes to prospective relief, when it comes to any sort of retrospective relief related to the conviction, including damages, we don't think it matters whether you're in or out. But when it comes to prospective relief, a prisoner does not have the ability to request from the court prospective relief concerning the violation of his constitutional rights if he's in jail. Prospective relief, and I know I'm caveating, but we think it's an important caveat. Most prospective relief from a prisoner will be fine, but if it necessarily implies the invalidity of his conviction, that's where we understand this court's decision in Edwards, Wilkinson, Skinner to carve out, and that's the line we're trying to hold in this case. So if a person is out, and going back to an example that you were exploring with Justice Gorsuch, he's out and he wants to deal with the collateral consequences of his conviction. And so he brings this 1983 suit. Is that okay or not? I think you said it might be barred, but I don't understand because he's not doing a habeas in run at that point. So why would that be barred? So we start from the baseline that a federal court cannot sit in review of a state court judgment. That goes all the way back to Rooker-Feldman. But that's not in the heck line of cases. And that's not even in that. You don't even need to depend on the heck line of cases for that. So if he's bringing that type of suit, please invalidate my judgment through Section 1983. We think that's out there. Barred for this other reason. Barred for this other reason. But if he's bringing it, if he's asking for a declaratory judgment or injunctive relief because he wants to engage in the activity in the future, we think he can properly proceed, and the court doesn't have to sort of scrutinize what does he really want to do here. The court can focus on the nature of the harm alleged, and if he really does have that credible fear of prosecution, he can bring the pre-enforcement suit. Thank you. Thank you, counsel. Mr. Butler. Mr. Chief Justice, and may it please the Court. Petitioner had the opportunity to challenge the constitutionality of the city's ordinance in the Mississippi trial court where he was prosecuted. Petitioner had the opportunity to challenge it on direct appeal through Mississippi's appellate courts or even file a cert petition here. Petitioner had the opportunity to seek post-conviction relief under Mississippi law. Petitioner had the opportunity and still has the opportunity to have his conviction expunged under not one but two different Mississippi statutes. Petitioner had the opportunity and still has the opportunity to ask Mississippi's governor for a pardon, and Petitioner had the opportunity and presumably still has the opportunity to challenge the ordinance under the Mississippi constitution, which offers greater First Amendment protection than the federal constitution. Although Petitioner claims in this case that the courthouse doors are closed, that argument ignores the countless doors Petitioner chose not to enter. What this case is about is Petitioner's preferred door, one that offers a favored venue and an opportunity for attorney's fees. That is the singular door that this court's decision in Heck v. Humphrey closes, and it closes it only until a favorable termination is achieved. Heck's favorable termination rule applies, quote, whenever a civil judgment would necessarily imply the invalidity of a criminal judgment. And under Wilkinson, the same rule applies no matter the relief that is sought. As Petitioner conceded during oral argument at the Fifth Circuit, and as the United States concedes in its briefing here, a declaration that the ordinance is unconstitutional on its face would call into question the prior conviction. If this court applies the same rule that it has for the past three decades, those concessions in this case, in addition to precedent, longstanding and deeply rooted principles of federalism, finality, comity, and consistency require a rejection of Petitioner's proposed new rule. I welcome the court's questions. Could the third party bring the same 1983 action and get prospective relief? Yes, Your Honor. That's Judge Oldham's fellow protester example, and that only proves the point that my friend on the other side fights the premise that the necessarily implies test is satisfied. That proves that it is, but that's the whole point, is that Heck is individual to the person. Section 1983 is not always and everywhere available to everyone. You've got to be within the class of persons. And in McDonough, this court said that it is the plainest conviction we're concerned about because we want to tie the proper person to the proper claim. Well, I understand all that, but if a third party can bring the exact same claim, why would the Petitioner be precluded from bringing a legitimate 1983 claim? Because of the extant conviction, and Heck tells us that we want to put the proper person before the court with the claim. To give the most famous example ever, Roe v. Wade. There was a doctor in that case, and then there was Roe that both were bringing the same challenges, but the court said for abstention reasons the doctor wasn't proper. Well, I think actually in Heck our concern was smuggling habeas claims into 1983 actions. But my point is, my question goes to whether or not if a claim is a legitimate 1983 claim, how can it be a habeas claim smuggled into 1983? Well, we think Heck departed from the habeas channeling rationale and added the independent rationale of the common law. And that was a debate between Justice Scalia and Justice Souter, and it added the favorable termination rule as an element to the 1983 cause of action. And unless and until a person with an extant conviction can meet that bar, then he doesn't have a claim accrued. And, Justice Roberts, to your point about collateral consequences of this particular ordinance, I would point the court to JA-71. Under this particular ordinance, if there are multiple convictions, there are enhanced punishments under the ordinance. For example, if there's a second conviction within a year's period of time, that individual would be essentially removed from... But what you're telling me is, if it's possible that this prisoner has to go through the expungement process and there are procedural bars from doing that, there is no remedy for him or her in order to secure their rights even 20 years from now. What you're basically saying is, simply because they've been previously convicted, they cannot seek prospective relief 20 years from now, unless they get an expungement, but if they're barred for some procedural reason, they have no protection. A few limiting principles on that, Your Honor. We certainly draw the distinction between a properly lodged as-applied challenge and what the plaintiff is trying to do here and make a facial challenge, a prospective claim in name only, which is really by way of a declaration, where he would want the entire law declared unconstitutional. He might lose because it's a facial challenge. We'll find out. But the question you're saying is, he is going to be barred. Unless and until he is able to achieve a favorable termination. How do you deal with Edwards? Certainly the language in Edwards is ordinarily a prospective claim would be barred, would not be within the ambit of heck. We're very comfortable with the ordinarily language, because ordinarily does not mean always. And if there is ever a situation where a- Well, the procedures that he was attacking were the same ones that he was using that he raised in his past disciplinary proceedings. So I don't know why Justice Scalia wouldn't have just ruled. Well, as I understand, it was the date-stamping procedures, and it was unclear in the case whether or not those date-stamping procedures had actually been applied. And even if they had, you still, Justice Scalia would say, you apply the test. And it's either a thumbs-up or thumbs-down determination. And if it's outcome neutral and it wouldn't result in a disavowalment or a collateral attack, then that's okay. But in this particular circumstance, there can be no greater impugnment on the prior conviction than a declaration that the law was unconstitutional. Didn't we say the opposite of what you're saying in Woolley? Woolley is this case. And we came to the opposite result from what you're advocating. Woolley is a pre-HECK abstention case by its own language. It is pre-HECK. I mean, if HECK did not exist, the way we would do this is we would say we have this case, Woolley, and Woolley just decides this case. And then the question is, should we really take HECK to be sub salientio overruling Woolley? I'd push back a little bit on that, Your Honor, because even now Woolley's abstention case, which by its own terms says it's conducting a jurisdictional analysis, of course HECK is different. We're trying to figure out if the elements of the cause of action are met. And so I would give the court the Skinner opinion, where you had Rooker Feldman and you had HECK. And this court tackled the jurisdictional issue completely separate from HECK and said, well, he may not have an abstention problem under Woolley, but he's got a HECK problem. And even in its own domain, Woolley has been referred to as the Woolley exception for state interference with daily life activities. You get other abstention cases like Huffman and like Penzl that emphasize that we care about having litigants exhaust and go through the direct appeal. And we care and we think that state courts are competent to make constitutional law determinations. So I think they're in tension with other abstention principles. I don't want to put words in your mouth, but you're basically telling us that post HECK and some of the other cases that come after that, Woolley is no longer good law. I'm saying the inquiry is different, and it's not an abstention case. Woolley was looking at the relief that the petitioner said that he wanted when HECK is looking at the implication of what would be held. And that's a big problem with all the questions is that in the HECK context, we have never let a petitioner label around HECK. And just because a plaintiff says, I promise, I promise, I'm not going to use it to undo my prior conviction, we look at the implication of success in a 1983 lawsuit, not what a plaintiff promises. And that's my issue, too, with the government's position. I mean, they would say that somebody who is in prison could just say, you know, they wouldn't say somebody could just say, I want to bring a pre-enforcement challenge and I promise I won't use it to try to get out of jail, but the day that that person gets out of jail, it would be okay. And that would rewrite the indirect method that was recognized in HECK. But let's say if we assume that they couldn't just for the purpose of a hypothetical, then you do see that there's a distinction between someone who is trying to attack or change his conviction and someone who's trying to prevent a future conviction based on the same behavior. I do, Your Honor, but HECK recognizes both a direct method and an indirect method. And so what the government would do would have you go back to the language in PRISER that says impugn the punishment. And so that's not what HECK said. HECK changed it and said we're worried about the fact of conviction or the duration of confinement. Right, but I guess my hypothetical is trying to say that, you know, we have a situation in which it is not possible for a person who is seeking purely prospective relief to do anything about his prior relief. I mean, I appreciate your saying we don't want to take his word for it, and to the extent that possibility exists, we might still have a HECK problem. But in my hypothetical, there's nothing you can do about your past conviction, and what you're trying to do is go out and speak to people again in a way that does not subject you to future convictions, and you would like a declaration that says that. Right, and I think the line again, the limiting principle we would say, is that if you're trying to seek a facial declaration of unconstitutionality, then that would imply. Perhaps you could make a properly lodged as applied challenge and say I want to do X, Y, and Z, and I think the law prohibits me from doing that, and that might be okay. And we see that in the law all the time. Can I just ask you about your initial litany of doors that were available to Mr. Olivia? Were they all state forms, all state remedies that you discussed? Is there any other federal remedy? Because I think one of the things that's a little odd for me in this situation is that HECK really was about the intersection of two statutes, both of which were trying to give someone a federal remedy. And if we agree with you, this person ends up with no federal remedy, and that just seems odd to reconcile those two statutes in a way that prevents their ability to have the kind of federal form that Congress obviously wanted. Two responses to that, Your Honor. So, yes, my laundry list of things were state court remedies, and that's okay. We have the language from Mohammed B. Close that says that's what HECK is all about, is making plaintiffs resort to state court litigation is the language, without resorting to 1983. So that's one. But then as a federal forum, the congressionally recognized federal forum is 1257, through a cert petition, if they properly raised it in the criminal conviction. And, as we say in the brief, perhaps there's a freestanding ex parte young claim that somebody could bring. But HECK is all about using a civil tort statute to impugn the prior conviction, and that's what HECK says you can't do. If we take it, if we proceed on the assumption that the basic idea of HECK expressed in imprecise terms is to prevent end runs around habeas, and then we have a situation in which someone is charged with a minor offense with a small penalty and a high likelihood that no time in incarceration is going to be imposed and all that would be done is maybe a small fine, and then years after, and this is done under a statute, under a particular statute, like the one involved here, and then sometime later the person brings a 1983 claim because that person wants to engage in what he claims is protected First Amendment activity going forward. Doesn't that seem quite far afield from what HECK was trying to get at? I don't think so, Your Honor, because, again, I think the limiting principle is the as-applied challenge. He certainly could bring an as-applied challenge, but not only just because the plaintiff can't bring that facial challenge, his fellow protester has already brought the facial challenge in a separate lawsuit here. And facial challenges are disfavored anyway, and so the fact that we would not let someone impugn their prior conviction with a facial challenge, that's not anything out of the norm. I mean, I would like to emphasize exactly what the petitioner is asking for here. He's characterizing his suit as a pre-enforcement challenge. He says he wants a facial declaration of unconstitutionality in the face of a prior conviction while he was on probation. Any one of those four things individually would be disfavored under the law, and he's trying to do every one of them collectively in a single lawsuit. And so there's no historical or traditional basis to allow that. Well, maybe he's wrong on the merits of the First Amendment claim, but assume for the sake of argument that he's right on the merits, and I'm not suggesting in any way that that's the case. Assume that for the sake of argument. And now he wants in the future to be able to engage in conduct that he thinks is protected by the First Amendment. And doesn't it seem a stretch of the underlying reasoning, the rationale of Heck to say, no, you can't ever do that. You're forever barred from engaging in what you think is protected First Amendment activity because you were previously convicted under this statute and received more or less a slap on the wrist. He's not forever barred. He's only barred until he achieves a favorable termination, which would be relatively easy to get under Mississippi law for a first-time misdemeanor. And the limiting principle, again, is the facial declaration portion. Nothing would prohibit him from bringing as applied challenge. Nothing would prohibit him from doing different conduct than he was convicted to in the past. We're only talking about the drastic relief of a facial declaration. But as to that, I mean, your rationale makes it sound almost punitive. Well, I'm sorry. He was just convicted. So he loses the right to do everything that a fellow protester can do. Because I haven't heard any other argument than that for why he loses that right. You know, any of the kind of underlying concerns about Heck don't seem to apply here. So then it just seems to come down to where there's this extra element of punishment, which is you can never challenge this statute again. Well, to some degree there is. There are consequences to the choice of not invoking your state court remedies. There's certainly that. But the whole rationale of Heck was the indirect method. And a facial declaration of unconstitutionality would be far more impugning than monetary damages ever would. And so if that is the reasoning of Heck, that we won't let monetary damages impugn the prior conviction, then I would suggest a declaration of unconstitutionality, which would mean the law was unconstitutional from its inception. I'm not sure how that would not satisfy the necessarily implies test. And to the government's credit, they admit that it would. Some of the – I've seen in other cases these provisions when you commit a crime, like this particular one, and you're convicted, you undertake not to commit further violations of that provision. Now, if he does, is he subject to reincarceration? Certainly that's a big part of the probation in this particular case. So he was under a suspended 10-day sentence at the time that he filed this 1983 suit. And so my friend on the other side would say, well, that's not custody, because that's just saying he can't violate the ordinance just like, you know, any other John Doe on the street couldn't violate the ordinance either. There's a big difference in that. If he violated the ordinance, he would immediately not pass go and go straight to jail for 10 days because he was under the suspended sentence. And that constitutes custody under this court's jurisprudence. And this argument about waiver from day one, our argument has been that this action is heck-barred. Now, what this action has transformed into over the course of this litigation has changed dramatically. But at every stage in our cert response, in the question presented, we talked about the suspended sentence. At page four of the cert response, we talked about probation. At 31 of the appendix, the district court acknowledged the probation. At page three of the appendix, the Fifth Circuit talked about the suspended sentence. Now, there were directly cases on point at the Fifth Circuit that foreclosed the petitioner's argument. So none of these, the probation never was an issue because the cases on point dictated the result in the case. Even if the condition requires a complete, you know, the sentence is finished and everything else, but you can't do this thing again, you know, coming back and preaching again. And if you do, we're going to prosecute you, but it's going to be, you know, from soup to nuts. It's not like we just say you did it and you go back. I mean, that's still barred? No, I mean, again, the bar here is either anything retrospective regarding damages, which was the case that he brawled against an individual police officer, or a facial declaration. If he were to make a properly lodged as applied challenge, that would be okay. He certainly doesn't need to go get arrested again. As Justice Sotomayor pointed out, a credible threat is certainly enough to get him standing. The facts of this particular case is that the police chief essentially begged him not to make him arrest him, and he told him, as the district court recognized, I'm aware of your ordinance, I choose not to follow it, and then directed the other people to continue speaking through a bullhorn. So there was all sorts of options, absent arrest, that he could have followed. I think the thing that makes your case a little quirky, this case, is the friend, the compatriot, who's doing exactly the same thing, and no one is suggesting that he couldn't get a pre-enforcement challenge, couldn't bring a pre-enforcement challenge and get a personal injunction in this way. I understand he tried and failed on the merits, but he still was not barred. And it just seems so strange when, in fact, he was able to establish his standing on the basis of Mr. Olivier's conviction, and then get into court and try to seek this kind of relief, but you say Mr. Olivier can't because of his own conviction. I understand, Your Honor, but I think that's a feature of my case for two reasons. It's not a feature that defeats it? Not at all, Your Honor, because, again, heck, it's personal. It's about who falls within the class of persons in 1983 that can satisfy all the elements of the claim, and if he has the conviction, he can't, even though somebody else can, and that just proves the point that the necessarily implies test is satisfying. Isn't the element really only there if the kind of claim he's bringing is like a malicious prosecution claim? In other words, the element isn't there if he's saying my claim is not I'm trying to challenge my prior conviction. It's like I was maliciously prosecuted in the past. What I'm saying is this is an unconstitutional statute and should not be applied to me in the future. One could argue the element isn't there in that circumstance if that's the claim he's making. Well, I think that what this Court's precedents say is what we're trying to figure out is what is in the domain of habeas, and the domain is much wider than access to habeas. We know that because of the McDonough case. That person was not even convicted, and that's still within the domain of habeas. And so what the cases tell us is that once there's an extant conviction, we apply the necessarily implies test, thumbs up or thumbs down, and that tells us what is within the domain of habeas. So that's all we're asking in this case is to satisfy the same test it has for the past three decades, and it's either a thumbs up or thumbs down determination, and we think we've satisfied that test. And back to the point about the fellow protester, I think that only suggests why the consequences of this case are not some detrimental consequences. Anybody could bring this facial challenge. But Mr. Olivier can't get post-CASA any sort of benefit, right? Each person has to bring their own lawsuit to secure the personal injunction. Well, he couldn't get an injunction that put the city under threat of contempt, but if he got an injunction that declared the ordinance unconstitutional on its face, I suspect he would get a big monetary damages award if the city were to go enforce that unconstitutional ordinance against him in the future. So, I mean, I think that would satisfy. Thank you, Counselor. Thank you, Justice Thomas. Justice O'Neill. Justice Gorsuch, anything further? I just want to make sure I understand how you'd have us read Woolley. It was a younger abstention case. Obviously, Heck says something very different, and the two of them are hard to reconcile. What's your best shot in maybe two lines? How many commas do I get? Abstention case, by its terms, jurisdictional analysis. Heck is elemental, not jurisdictional. Skinner did separate analysis for jurisdiction and for Heck inquiries. And even in its own domain, Woolley has been called the Woolley exception that applies to state interference with daily life activities. And we get other cases, Huffman, Penzl, that treat it differently. And then you get the lower courts that go into this line about coercive versus remedial measures that limits it even more. Thank you. Ms. Cameron? Mrs. Barrett? Thank you, Counsel. Rebuttal, Ms. Huff? Thank you, Mr. Chief Justice. Three points. I think my friend, the city's attempted distinction between an as-applied claim and a facial claim and his suggestion that the suit could also go forward under Ex Parte Young, I think that is a concession. Because the differences there go only to the form of relief. So if Heck, by my friend's confession, would not apply to an as-applied challenge, would not apply to Ex Parte Young, then I think that makes this case a little bit easier because then it's clearly Heck-barred. And just as a matter of the record, Mr. Olivier did bring an as-applied claim in this case. That is JA-21. And at the record on appeal at page 592, the city acknowledged in its response below in the district court that Mr. Olivier had brought both a facial and an as-applied claim. Again, we don't think that's important, but we do think my friend's attempt to distinguish from that is a concession. If Heck wouldn't bar an Ex Parte Young action, if Heck wouldn't bar a First Amendment action, it does not bar his claim either. And I think that goes to my second point, which is this is a heartland Section 1983 case. As this court discussed at length yesterday, Section 1983 gives litigants access to a federal forum to vindicate federal rights. And it has no exhaustion requirement with respect to all of the doors that my friend referred to that, in his view, Mr. Olivier would have had to go through. In terms of Woolley, Justice Kagan, I think, yes, Woolley was before Heck, but it was after Prizer. And I think there's simply no way to reconcile Woolley and the reasoning in Woolley with a Heck bar applying in this case. And I think outside of the Fifth Circuit, what I'll call the Woolley rule, right, where you are seeking to enjoin future prosecution under the ordinance you have been previously convicted, that is Woolley to a D. That is the rule in every part of the country except the Fifth Circuit. And we think applying Heck to pre-enforcement claims like Olivier's really puts what this court has referred to as the hapless plaintiff to the impossible choice of intentionally flouting state law or foregoing what he believes to be constitutionally protected activity, as the court said in Steffel. And this court has repeatedly rejected that kind of catch-22 in case after case in Steffel, in Woolley, and Susan B. Anthony, just to name a few. The plain text that Congress enacted provides Olivier a cause of action for equitable relief to bar future enforcement of unconstitutional laws. And neither Heck nor the federal habeas regime eliminates that cause of action. And that brings me to my last point, which is Olivier's prospective pre-enforcement claim won't necessarily imply the invalidity of his conviction or sentence. And to your point, Justice Alito, to really put a fine point on it, what Mr. Olivier is seeking here is exactly what the Woolleys sought and obtained, and that is relief from future prosecution. That is it. Relief from future prosecution under the law. A claim for prospective relief deals with what happens in the future. It doesn't relieve Olivier of any consequences of his conviction. And it doesn't compensate Olivier for any potential harm caused by his conviction. And this court has applied Heck's favorable termination requirement only to those two types of claims. And that pattern shows what Heck reaches, what it doesn't, and what its language means. It doesn't reach a pre-enforcement claim for purely prospective relief against future prosecution. That's the precise claim that this court allowed in Woolley. And adopting the city's interpretation would radically expand Heck's scope. It would stretch habeas' coverage too far, undermine Section 1983's effectiveness, and create an unworkable rule. Thank you, Your Honor. Thank you, counsel. The case is submitted.